**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**LISA BISHOP o/b/o T.F.,**

                **Plaintiff,**

**vs.**                                                  **7:13-cv-1059
(MAD)**

**CAROLYN W. COLVIN,**

                **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**LEGAL AID SOCIETY OF**               **VICTORIA M. ESPOSITO, ESQ.**
**NORTHEASTERN NEW YORK,
INC. - CANTON**
17 Hodskin Street
Post Office Box 648
Canton, New York 13617
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **TOMASINA DIGRIGOLI, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff ("T.F.") commenced this action on August 28, 2013, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision by the Commissioner of Social Security ("the Commissioner") denying T.F.'s application for Supplemental Security Income ("SSI"). *See* Dkt. No. 1.

On June 8, 2010, T.F. filed an application for SSI, alleging a disability onset date of January 1, 2000. *See* Dkt. No. 9, Administrative Transcript ("T") at 133. This application was denied on October 5, 2010. *Id.* at 25. T.F. then requested a hearing and appeared with her counsel before Administrative Law Judge ("ALJ") F. Patrick Flanagan on August 11, 2011. *See id.* at 46-78. On October 13, 2011, ALJ Flanagan issued a decision denying T.F.'s application. *See id.* at 22-45. T.F. subsequently requested review by the Appeals Council and was denied such review on June 28, 2013, making the ALJ's decision the final decision of the Commissioner. *See id.* at 1-6.

Presently before the Court are the parties' cross motions for judgment on the pleadings. *See* Dkt. Nos. 13, 17.

## II. BACKGROUND

T.F. was fourteen years old at the time of the hearing, held on August 11, 2011. *See* T. at 48. A "Child Disability Report Form" completed for T.F. by her mother in connection with T.F.'s application for SSI benefits alleges that T.F.'s disabling illnesses and conditions include learning, social, emotional, and behavioral limitations and schizophrenia. T. at 165. The record evidence in this case is undisputed, and the Court adopts the parties' factual recitations. *See* Dkt. No. 13 at 2-16; Dkt. No. 17 at 4 ("The Commissioner incorporates by reference Plaintiff's recitation of the facts, except for any legal inferences or conclusions, made in Plaintiff's Brief (Pl. Br.) at 2-16.").

## III. DISCUSSION

**A.     Standard of Review**

The Social Security Act (the "Act") authorizes payment of SSI benefits to individuals with "disabilities." An individual under the age of eighteen is disabled, and thus eligible for SSI

benefits, if he

> has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). The definitional provision excludes from coverage any "individual under the age of 18 who engages in substantial gainful activity." *Id.* § 1382c(a)(3)(C)(ii).

> Regulations enacted by the Social Security Administration set forth a three-step analysis for evaluating whether a child's impairment meets this definition of disability: First, the ALJ considers whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id.* § 416.924(c). Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or, as is most pertinent here, "functionally equals" a disability listed in the regulatory "Listing of Impairments." *Id.* § 416.924(c)–(d).

*Miller v. Comm'r of Soc. Sec.*, 409 F. App'x 384, 386 (2d Cir. 2010).

Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 488 (E.D.N.Y. 2003). If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve month durational requirement is satisfied, the child will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *see also Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004).

Under the Social Security Regulations (the "Regulations"), analysis of functionality is performed by consideration of how a claimant functions in six areas which are denominated as "domains," and described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those prescribed domains include:

3

"(i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being." *Id.* A finding of disability is warranted if a "marked" limitation, defined as an impairment that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," *id.* § 416.926a(e)(2)(i), is found in two of the listed domains, *id.* § 416.926a(a). Functional equivalence also exists in the event of a finding of an "extreme" limitation, meaning "more than marked" and representing an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). This rating is only "give[n] to the worst limitations." *Id.*; *see also Pollard*, 377 F.3d at 190.

The Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The ALJ must set forth the crucial factors supporting the decision with sufficient specificity to enable the court to decide whether the decision is supported by substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the weight of the evidence does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

**B.    The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that T.F. had not engaged in

substantial gainful activity since May 18, 2010, the application date. T. at 28.[1] At step two, the ALJ concluded that T.F. had the following severe impairments: speech/language disorder, borderline intellectual functioning, and adjustment disorder. *Id.* At the third step of the analysis, the ALJ determined that T.F. did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Finally, the ALJ found that T.F. did not have an impairment or combination of impairments that functionally equals the severity of the listings. *Id.* at 29. Specifically, the ALJ found that T.F. had only one marked limitation, in the domain of interacting and relating with others. *Id.* at 38. In all other domains, the ALJ found that T.F. had less than marked limitations or no limitation. *See id.* at 35-40. Therefore, the ALJ made a determination that T.F. was not disabled as defined by the Act. *Id.* at 41.

**C.  Analysis**

*1. Functional domains*

The ALJ must analyze whether a claimant has an impairment or combination of impairments that functionally equals a listing based upon an analysis of six domains: (1) attending and completing tasks; (2) acquiring and using information; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

The Regulations define an extreme limitation as follows:

> An "extreme" limitation . . . interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and

---

[1] T.F.'s application is dated June 8, 2010, but the ALJ refers to May 18, 2010 as the application date. *See* T. at 133, 26-28.

5

cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

. . . .

(iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have an "extreme" limitation when you have a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. §§ 416.926a(e)(3)(i), (iii).

The Regulations define a marked limitation as:

(i) . . . an impairment(s) [that] interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

. . . .

(iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. §§ 416.926a(e)(2)(i), (iii).

### *a. Acquiring and using information*

6

The ALJ found that T.F. had less than marked limitations in acquiring and using information. T. at 35-36. "In assessing this domain, the ALJ must consider how well a child acquires or learns information, and how well she can use the information she has learned." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 146 (N.D.N.Y. 2012) (citation omitted). For children T.F.'s age, the Regulations provide:

> Adolescents (age 12 to attainment of age 18). In middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

20 C.F.R. § 416.926a(g)(2)(v).

T.F. argues that the ALJ did not consider T.F.'s communicative limitations, as well as other relevant evidence, when he found less than marked limitations in the domain of acquiring and using information. Dkt. No. 13 at 22. Specifically, T.F. claims that speech-language pathologist ("SLP") Maureen Lyng's conclusion "that T.F.'s speech was 'not sufficiently developed to support academic achievement,'" and other evidence of T.F.'s speech limitations should have been considered in the ALJ's decision. *Id.* at 22-23.

In support of this argument, T.F. relies on *LaValley v. Colvin*, No. 7:12-cv-771, 2013 WL 2444203 (N.D.N.Y. June 5, 2013). In *LaValley*, this Court adopted in its entirety a Report and Recommendation remanding an ALJ's decision solely for the calculation of benefits because the evidence before the Court demonstrated that plaintiff had marked limitations in at least two

functional domains. *Id.* at *4. There, "the ALJ did not adequately account for the impact of a speech delay on Claimant's ability to acquire and use information and did not properly address other, important evidence of record, which clearly demonstrated a marked limitation in [the domain of acquiring and using information]." *Id.* at *10.

In that case, an SLP found "that Claimant's overall language and articulation skills were 'significantly delayed.'" *LaValley*, 2013 WL 2444203 at *10. A second SLP "evaluated Claimant in September of 2009 and noted a 'severe delay in the area of speech sound development[,]'" and determined that the claimant's "speech skills were 'not sufficiently developed to support academic achievement and everyday conversational interaction with peers and adults.'" *Id.* at *11. The Court explained that "[t]he ability to use language is of 'vital importance' to the domain of acquiring and using information." *Id.* The Court further explained that "[t]he fact that a child receives speech/language therapy is an indication that his or her communication impairment(s) may be interfering with the ability to acquire and use information." *Id.* at *11; *see also* SSR 09-3p. Thus, the Court found the SLPs' evaluations of the claimant relevant to the domain of acquiring and using information.

Additionally, in *LaValley*, in a teacher questionnaire, the claimant's teacher "reported that Claimant had 'often or marked' difficulty learning new material, recalling previously learned material, and following instructions." *LaValley*, 2013 WL 2444203 at *11. Further, a non-examining State Agency review consultant found that the claimant had a marked limitation in the domain of acquiring and using information. *Id.* The Court held that the ALJ's decision to afford "no significant weight" to the teacher questionnaire, and instead rely on "his own, limited interaction with Claimant during the hearing" was legal error, and therefore the ALJ did not rely on substantial evidence when he found less than marked limitations in the domain of acquiring

8

and using information. *Id.* at *11-12. In addition, "[t]he ALJ did not address the fact that [claimant's teacher's] assessment of Claimant's limitations in this domain was supported by [the SLP's] evaluation and the opinion provided by the State Agency review consultant." *Id.* at *12.

The Court finds that the current case's similarities to *LaValley* warrant remand for further proceedings. Here, the ALJ based his determination as to the domain of acquiring and using information on a function report completed by T.F.'s mother and the consultative psychiatric examiners' reports. T. at 36 (citing *id.* at 155-63, 218-23, 239-47). The ALJ also discussed the function report completed by T.F., T.F.'s individual education plan ("IEP"), and the 2009 three-year review completed by T.F.'s school. *Id.* at 35-36. The ALJ discussed the medical evidence as follows:

> The evidence of record supports [that] the claimant attends a resource room much of the day and obtains special education assistance in a number of school subjects. (Exhibit 3E). The claimant's special education teacher reported that although the claimant works hard, she often has difficulty learning a new subject and recalling information. (Exhibit 10E). Objective testing indicates she functions at a borderline intellectual functioning range, including some memory difficulty, but is able to acquire and use information at varying degrees depending on the subject and type of reasoning required. (Exhibits 6F; 10F). The claimant has been cleared to advance to next grades every year except kindergarten, and will soon attend high school. (Exhibit 9E).

*Id.* at 36. However, the ALJ's analysis does not accurately reflect the record.

First, the ALJ failed to assign weight to all of the evidence. His decision makes no mention of the weight afforded the function report (*id.* at 155-63), the IEP (*id.* at 144-51), the three-year review (*id.* at 137-42), the teacher questionnaire completed by Logan (*id.* at 193-98), or the education records from Canton Central School District (*id.* at 179-92). The Court cannot determine whether the ALJ relied on substantial evidence in this domain, because the majority of evidence cited was not given specific weight.

9

Second, the ALJ failed to consider Lyng's Speech/Language consultative examination report ("Lyng's Report"), which found marked limitations in the domain of acquiring and using information. *See id.* at 193. While Defendant argues that "the ALJ properly addressed T.F.'s speech, language and communication problems under the domain of interacting and relating with others[,]" she does dispute that the ALJ did not address T.F.'s speech impairments in the context of acquiring and using information. Dkt. No. 17 at 10. Lyng found that T.F.'s "language skills are falling in the severely delayed range[,]" that her "speech and language skills are not sufficiently developed to support academic achievement and everyday conversational interaction with peers and adults." *Id.* at 214-15. This report used identical language to the SLP's report in *LaValley*. Because the ALJ purported to afford it "some" weight, at a minimum he should have considered it in his determination. *Id.* at 33.

In addition, Lyng found that T.F.'s standardized test scores put her 2.3 standard deviations below the mean. *Id.* at 214. Results of standardized testing "at or below two standard deviations from the mean is one of the criteria for classifying cognitive limitations as marked." *Rossi v. Comm'r of Soc. Sec.*, No. 5:10-cv-97, 2010 WL 5313771, *8 (N.D.N.Y. Dec. 2, 2010); *see also* 20 C.F.R. § 416.926a(e)(2)(iii). While standardized test results two standard deviations below the mean are not determinative of a marked limitation, the regulations require that an ALJ consider a claimant's "test scores together with the other information [they] have about [claimant's] functioning, including reports of classroom performance and the observations of school personnel and others." 20 C.F.R. § 416.926a(e)(4)(ii). The ALJ did not do so here. On remand, the ALJ must consider Lyng's Report within the domain of acquiring and using information.

In this domain, the ALJ must also consider Logan's CFQ, which indicates that T.F. has "often or marked" limitations in all but two aspects of acquiring and using information, with the

10

final two categories marked as "always or extreme." T. at 193. "An analysis of this domain should include school records including non-medical evidence provided by a teacher, who works with a child on a daily basis and observes her in a social setting with peers as well as adults." *Hamedallah*, 876 F. Supp. 2d at 146-47 (citations omitted).

Third, the ALJ's interpretation of the consultative psychiatric examination by Dr. Kimball is not supported by substantial evidence. The ALJ stated that T.F. "is able to acquire and use information at varying degrees depending on the subject and type of reasoning required." *Id.* at 36. While Dr. Kimball's assessment summary supports this statement, Dr. Kimball found T.F. to score well below average in all subjects. *See id.* at 242. As the ALJ afforded "significant weight" to Dr. Kimball's psychiatric evaluation, he should have considered the entire report in his decision, and considered that although T.F. exhibited the ability to use information at varying degrees, she exhibited below-average scores on all tests performed by Dr. Kimball.

Additionally, T.F.'s WRAT-4 math computation test score places her less than one-half percent away from two standard deviations below the mean. *Id.* at 242. According to the regulations, "difficulty solving mathematics questions or computing arithmetic answers" is one of the limitations an ALJ may consider. 20 C.F.R. § 416.926a*(*g)(3)(iv). The record shows that T.F. has serious difficulties with mathematics, with Dr. Kimball's test putting her at a third grade level, T. at 242 (reporting that "[T.F.] did less well on Arithmetic than on any other academic areas[,]" and "Math Computation is definitely a weak area"); *see also id.* at 141 (recording T.F.'s math computation score at the first percentile); *id.* at 139 (finding that T.F. was "significantly below grade level in all academic areas" as of 2009). The ALJ did not address T.F.'s limitations in math.

Fourth, the ALJ did not consider "that Claimant was receiving instruction in a highly-structured, restrictive environment." *Juckett ex rel. K.J. v. Astrue*, No. 09-cv-708, 2011 WL

11

4056053, *12 (N.D.N.Y. June 29, 2011). While the ALJ mentioned that "claimant attends a resource room much of the day and obtains special education assistance in a number of school subjects," he did not explain why this evidence lead to a less than marked limitation. T. at 36; *cf. Smith ex rel. J.H. v. Colvin*, 935 F. Supp. 2d 496, 506 (N.D.N.Y. 2013) ("The fact that [claimant] cannot function at grade level in a fundamentally important subject like mathematics, in spite of the highly structured and supporting environment of her special education program and a student-teacher ratio of thirteen to three, strongly indicates a marked limitation in the 'acquiring and using information' domain."). T.F. argues that her structured educational setting must be taken into account under SSR 09-1p and 20 C.F.R. § 416.924a(b)(9)(ii). *See* Dkt. No. 13 at 19. Specifically, while the ALJ noted that T.F. "has been cleared to advance to next grades every year except kindergarten," he did not acknowledge T.F.'s placement in a classroom with a student-teacher-paraprofessional ratio of 12:1:1, her modified curriculum, or special education placement since age three. *Id.* at 36. The Court agrees that this omission constitutes an additional reason to remand this case for further administrative proceedings.

Fifth, the Court agrees with T.F. that the Commissioner also failed to consider that "T.F. had been receiving speech therapy for most of her life." Dkt. No. 13 at 18. Pursuant to SSR 09-1p, the Commissioner will not consider a child to be as independent as peers if the child "needs a person, medication, treatment, device, or structured, supportive setting to make his functioning possible or to improve functions." SSR 09-1p. Further, even if the child is functioning well with help or support, he or she still has a limitation. *Id.* "The more help or support of any kind that a child receives beyond what would be expected for children the same age without impairments, the less independent the child is in functioning and the more severe we will find the limitation to be." *Id.*

Contrary to this regulation, the ALJ failed to discuss evidence of T.F.'s life-long speech therapy, including that she began receiving intensive speech therapy five times a week in the year 2000. T. at 137. Additionally, despite speech therapy, T.F. is still 2.3 standard deviations below the mean on standardized testing, and therefore she is not "functioning well with help or support." SSR 09-1p. The ALJ was required to consider T.F.'s years of therapy and its effect on her independence in functioning.

Accordingly, the ALJ's failure to consider T.F.'s communicative limitations, below grade level performance in mathematics and other areas of reasoning, ongoing need for speech therapy, and restricted learning environment requires remand. While *LaValley* remanded solely for calculation of benefits, there, the medical opinion of a non-examining state review consultant found a marked limitation in acquiring and using information. *LaValley*, 2013 WL 2444203 at *12. Here, M. Marks, a non-examining state review consultant, found a less than marked limitation, consistent with the ALJ's decision. T. at 228. Therefore, the medical opinion evidence available does not require that this Court find a marked limitation in acquiring and using information, and remand for a rehearing is the appropriate remedy.

Based on the foregoing, the Court reverses and remands this case for further administrative proceedings because the ALJ failed to rely on substantial evidence when he found a less than marked limitation in acquiring and using information.

### *b. Interacting and relating with others*

The ALJ found a marked limitation in interacting and relating with others. T. at 38. This domain considers how well a claimant initiates and sustains emotional connections, develops and uses the language of the community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). For

claimants within T.F.'s age group, the Regulations provide:

> Adolescents (age 12 to attainment of age 18). By the time you reach adolescence, you should be able to initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups. You should begin to be able to solve conflicts between yourself and peers or family members or adults outside your family. You should recognize that there are different social rules for you and your friends and for acquaintances or adults. You should be able to intelligibly express your feelings, ask for assistance in getting your needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers).

20 C.F.R. § 416.926a(i)(2)(v).

T.F. claims that substantial evidence shows that T.F. has an severe limitation in this domain. Dkt. No. 13 at 18. The ALJ relied on T.F.'s function report, Lyng's Report, Logan's CFQ, and the psychiatric consultative examination reports from Dr. Shapiro and Dr. Kimball when he determined that T.F. had a marked limitation in her ability to interact and relate with others. T. at 38. However, he did not discuss a portion of this domain where T.F. has significant issues, the "ability to initiate and develop friends with children who are your age." 20 C.F.R. § 416.926a(i)(2)(v). T.F.'s mother testified that T.F. "only has a couple [friends] in town," and that she "[does not] pick up when the other kids are making fun of her." T. at 62-63. Her testimony is corroborated by T.F.'s IEP, which states that T.F. is "not socially accepted by peers." *Id.* at 140. Further, Logan confirmed that T.F. often has trouble "[m]aking or keeping friends," and "is unaware of her social surroundings." *Id.* at 195. The ALJ did not address this evidence, noting only that T.F. reported having friends and generally getting along with others. *Id.* at 38. Despite the ALJ's failure to discuss T.F.'s inability to interact appropriately with her peers, the Court finds that his omission was harmless. While the evidence before the ALJ was sufficient to find a

14

marked limitation, it did not require the ALJ to find a severe limitation in this domain.

In *Hart ex rel. Hart v. Massanari*, 192 F. Supp. 2d 31 (W.D.N.Y. 2001), the court found a severe impairment existed where the claimant had significant problems with authority figures, problems with peers, and resorted to fighting as a coping strategy. *Hart*, 192 F. Supp. 2d at 36-37. In contrast, here, the medical and educational record evidence shows that while T.F. may not be aware of when her peers make fun of her and may have a limited number of friendships, she has no problem interacting with authority figures or reported behavioral problems and does consider some children to be her friends. *See* T. At 30 (describing T.F.'s testimony regarding time spent with friends at school); *id.* at 242 (stating that T.F. "was very friendly here . . . [and s]he did not seem depressed or anxious"); *id.* at 206 ("On examination, [T.F.'s] demeanor and responsiveness to questions was cooperative."); *id.* at 140 (stating that teacher found T.F. to be happy, friendly, and outgoing). Therefore, the ALJ's failure to discuss this aspect of interacting and relating with others is harmless, because the evidence does not require finding a limitation higher than marked in this domain. *See Stevens v. Comm'r of Soc. Sec. Admin.*, No. 5:05-cv-1268, 2008 WL 5057029, *3 (N.D.N.Y. Nov. 24, 2008) (finding a marked, but not extreme, limitation in interacting and relating with others where claimant had only one friendship, reacted well to adults, and followed classroom and school rules).

Based on the foregoing, the Court finds that the ALJ relied on substantial evidence when he found a marked limitation in the domain of interacting and relating with others.

### c. *Attending and completing tasks*

The ALJ found a less than marked limitation in attending and completing tasks. T. at 37. This domain considers a claimant's ability to focus and maintain attention, how well a claimant begins, carries through, and finishes activities, the pace at which activities are performed, and the

15

claimant's ability to change activities with ease. For T.F.'s age group, the Regulations provide:

> In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.

20 C.F.R. § 416.926a(h)(2)(v).

While T.F. alleges that she has a marked limitation in this domain, she has pointed to no evidence overlooked by the ALJ or caselaw in support of her position. Dkt. No. 13 at 24. The ALJ based his finding on Logan's CFQ, which stated that T.F. "has difficulty transitioning [because s]he wants to complete tasks she is working on." T. at 194. This explanation encompasses all of the areas where Logan reported that T.F. "always" had problems, because they all relate to how quickly T.F. finished tasks. *Id.* at 194. The ALJ's decision makes clear that he considered Logan's CFQ and T.F.'s function report. T. at 37. Further, none of the medical opinions found a marked limitation in this domain. *See* T. at 207 (finding that T.F. "appears to be able to complete some age appropriate tasks" and that her attention and concentration were intact); *id.* at 242 ("[T.F.] can do simple chores at home. She can vacuum, feed the animals, clean her bedroom, and do other skills."); *id.* at 228 (reporting a less than marked limitation in the domain of attending and completing tasks).

Therefore, although Logan's CFQ could support a finding of a marked limitation, the medical opinions of record show that the ALJ relied on substantial evidence when he found a less than marked limitation in this domain. *See Watson ex rel. K.L.W. v. Astrue*, No. 07-cv-6417T, 2008 WL 3200240, *3 (W.D.N.Y. Aug. 5, 2008) (finding that an ALJ correctly found less than

16

marked limitations in attending and completing tasks where the medical record did not support a marked impairment, and school evaluations showed that the claimant could be directed to a task, even though she required twice the time to complete assigned tasks, had difficulty focusing on her work, and was easily distracted); *Allen ex rel. Allen v. Barnhart*, No. 05-cv-7855, 2006 WL 2255113, *6 (N.D.N.Y. Aug. 4, 2006) (holding that although evidence described claimant as overactive and easily distracted, it also included that claimant could listen and follow directions most of the time and could be refocused to a particular task, meaning a finding of less than marked limitation in attending and completing tasks was supported by substantial evidence).

Based on the foregoing, the Court holds that the ALJ relied on substantial evidence when he determined that T.F. had a less than marked limitation in attending and completing tasks.

### 2. *Subjective complaints*

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). The regulations set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. The ALJ must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

17

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quotations and citations omitted).

If a plaintiff's testimony concerning the intensity, persistence, or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether the plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, *2 (Soc. Sec. Admin. Jul. 2, 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record. *Id.* at *5.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)) (other citations omitted). An ALJ rejecting subjective testimony "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The Commissioner may discount a plaintiff's testimony to the

extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891,*10 (E.D.N.Y. June 27, 2007). With regard to the sufficiency of credibility determinations, the Commissioner has stated that:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2.

T.F. alleges that the ALJ did not "make the requisite 'specific findings concerning the credibility of the parent's testimony.'" Dkt. No. 13 at 21 (quoting *F.S. v. Astrue*, No. 1:10-cv-444, 2012 WL 514944, *19 (N.D.N.Y. Feb. 15, 2012). Further, T.F. argues that the ALJ failed to apply "the standard or factors set forth in SSR 96-7p and 20 C.F.R. § 416.929." *Id.* However, T.F. does not reference any specific testimony of her parents that would have altered the disability determination, and "there is no indication that any assessment that may have been made by the ALJ concerning the claimant's credibility played a role in the disability analysis." *Schell v. Astrue*, No. 3:10-cv-1476, 2011 WL 7272333, *9 (N.D.N.Y. Nov. 28, 2011), *adopted by* 2012 WL 427047 (N.D.N.Y. Feb. 10, 2012). As in *Schell*, while the ALJ relied on documents completed by T.F.'s mother, he never referenced her testimony in his domain determinations. T. at 35-41. Therefore, the Court finds that even if the ALJ did not follow the proper credibility determination process under 20 C.F.R. § 416.929, his failure to do so is harmless error.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **DENIED**; and the Court further

**ORDERS** that this case is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 27, 2015
 Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge